Stephen L. THOMAS, Jr.

v.

The VETERANS ADMINISTRATION
and the Federal Bureau of
Investigation.

Civ. No. H–79–80.

United States District Court,
D. Connecticut.

March 19, 1979.

Kate W. Haakonsen, Law Offices of M. Allan Peck, Hartford, Conn., for plaintiff.

George J. Kelly, Jr., Asst. U. S. Atty., Hartford, Conn., Richard Blumenthal, U. S. Atty., New Haven, Conn., for defendants.

## RULING ON MOTION FOR A PRELIMINARY INJUNCTION

CLARIE, Chief Judge.

The plaintiff, an employee of the Veterans Administration, seeks a preliminary injunction to restrain said agency from further pursuing the pending administrative proceedings seeking his dismissal, until the propriety of said investigation has been adjudicated. The plaintiff alleges *inter alia* that the charges against him were founded on information, which was improperly and illegally obtained and was in fact motivated by racial prejudice.

The Court finds that the plaintiff has failed to demonstrate irreparable injury, which is a prerequisite to the issuance of a preliminary injunction. Furthermore, at this stage of the administrative proceedings, the proposed injunctive relief would be an unwarranted judicial intrusion into the administrative review authority of the Veterans Administration.

### Jurisdiction

Jurisdiction over this matter is found pursuant to the grant of authority in 28 U.S.C. § 1343(4) and 5 U.S.C. § 552a(g)(1).

### Facts

The plaintiff, a black employee, occupies the classified position of Chief of Administrative Services in the Hartford Regional Office of the Veterans Administration (hereinafter "V.A."). He has been an employee of the agency for 11 years. It is generally recognized that he has compiled a creditable record within that agency, during his period of employment.

Prior to assuming his present position at the Hartford office, he had been employed as Chief of Administrative Services in the V.A.'s Sioux Falls, South Dakota office. While employed there, he was arrested on or about June 11, 1975 for the sale of amphetamines. This arrest ultimately resulted in his pleading guilty to an information charging him with violating 21 U.S.C. § 844(a) (Simple Possession). Since this was the plaintiff's first drug offense, he

was considered eligible for the statute's special deferred sentencing provisions.[1] Pursuant to those procedures, the court placed the plaintiff on probation with the expressed understanding that upon the successful completion of his probationary period, the Court would dismiss the proceedings without imposing a finding of guilt. It appears that the plaintiff's immediate supervisors, though aware of the arrest, never reported the incident to the V.A.'s central office in Washington.

In September of 1977, the plaintiff was transferred to the V.A.'s office in Hartford where his tenure was apparently marred by friction between him and the then Office Director, Joseph Card. The plaintiff attributes this hostility to two sources: (1) the plaintiff's refusal to conceal claimed shortages of money and supplies within the office, and (2) Card's racial prejudice.

In early March of 1978, Card learned of the plaintiff's Sioux Falls arrest and immediately notified V.A. officials in Washington. The following week, Walter Burleson, a special investigator within the V.A. was ordered to initiate an inquiry into the matter. Included in the investigation authorization was a copy of an F.B.I. Criminal Identification Record commonly referred to as "a rap sheet." It is undisputed that the V.A. should have sought the plaintiff's consent before requesting this arrest record from the F.B.I.[2] Furthermore, the information contained in the rap sheet was technically erroneous in that it indicated that the plaintiff had been convicted of possession of amphetamines, when in fact except for the plea no permanent finding of guilt was ever imposed by the trial court.

On April 15, 1978 Burleson conducted a formal interview with the plaintiff concerning the factual circumstances of the Sioux Falls arrest.[3] He revealed his possession of the rap sheet and informed the plaintiff that the information was sought by the V.A.'s central office in Washington. The plaintiff was given an opportunity to review the transcript of this interview and to make any relevant changes before signing the document under oath.

On April 6, 1978 the plaintiff signed a waiver authorizing Burleson to obtain copies of all Drug Enforcement Agency reports concerning the Sioux Falls arrest.[4] The

---

1. The special sentencing provision of 21 U.S.C. § 844 reads in pertinent part:

    "(b)(1) If any person who has not previously been convicted of violating subsection (a) of this section, any other provision of this subchapter or subchapter II of this chapter, or any other law of the United States relating to narcotic drugs, marihuana, or depressant or stimulant substances, is found guilty of a violation of subsection (a) of this section after trial or upon a plea of guilty, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place him on probation upon such reasonable conditions as it may require and for such period, not to exceed one year, as the court may prescribe. Upon violation of a condition of the probation, the court may enter an adjudication of guilt and proceed as otherwise provided. The court may, in its discretion, dismiss the proceedings against such person and discharge him from probation before the expiration of the maximum period prescribed for such person's probation. If during the period of his probation such person does not violate any of the conditions of the probation, then upon expiration of such period the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this subsection shall be without court adjudication of guilt, but a nonpublic record thereof shall be retained by the Department of Justice solely for the purpose of use by the courts in determining whether or not in subsequent proceedings, such person qualifies under this subsection. Such discharge or dismissal shall not be deemed a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime (including the penalties prescribed under this part for second or subsequent convictions) or for any other purpose. Discharge and dismissal under this section may occur only once with respect to any person."

2. Investigator Burleson admitted in open court that the consent of the plaintiff should have been sought before the V.A. requested the "rap sheet" from the F.B.I. (Tr. 37).

3. A second purpose for Burleson's trip to Hartford was to investigate allegations that Director Card was misusing government personnel and vehicles. (Tr. 31).

4. The waiver reads:

    "I, Stephen J. Thomas, hereby authorize the U. S. Drug Enforcement Agency to dis-

following day he signed a similar waiver authorizing the release of all court records on the incident. The plaintiff maintains that he signed these waivers solely for the sake of maintaining good will, since he was under the impression that all records of the incident were sealed. However, valuable investigatory leads were in fact derived from the Drug Enforcement files.[5]

A second formal interview with the plaintiff was then conducted by Burleson on August 14, 1978. This interview was similarly transcribed and ultimately reviewed and signed by the plaintiff under oath.

On February 5, 1979 the plaintiff received a four page memorandum from the V.A. notifying him of the proposed dismissal action and informing him of his administrative rights. The dismissal was to be based upon allegations that the plaintiff violated V.A. regulations by:

(1) engaging in infamous and immoral conduct;

(2) engaging in criminal conduct (citing the Sioux Falls arrest);

(3) lying during the internal investigation of his affairs; and

(4) selling and/or soliciting the sale of drugs while on the V.A. premises in Sioux Falls.

The plaintiff has moved to enjoin his removal proceeding, because it allegedly violates *inter alia* his constitutional rights to due process and equal protection, as well as specific provisions of the Federal Privacy Act of 1974, 5 U.S.C. § 552a *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* The essence of the plaintiff's claim is that this dismissal action is in fact an administrative vendetta improperly instigated by former Director Card. The plaintiff alleges that the main catalyst behind these charges is the F.B.I. rap sheet which not only is inaccurate but also was obtained illegally. The plaintiff maintains that unless the dismissal proceeding is enjoined, he will suffer irreparable injury to both his name and career.

### Discussion of Law

1. *Standards for a Preliminary Injunction*

The ability to grant preliminary injunctive relief is an extraordinary power which the Court should exercise only with great restraint and caution. *Heldman v. United States Lawn Tennis Assoc.*, 354 F.Supp. 1241, 1252 (S.D.N.Y.1973). Restraint in such matters is especially appropriate in a case concerning dismissal from federal employment since courts traditionally allow the government wide latitude in the "dispatch of its own internal affairs." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230 (1971); *Sampson v. Murray*, 415 U.S. 61, 83, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974).

A preliminary injunction may issue only upon a

". . . showing of either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250 (2d Cir. 1973).

Subsequent cases have made it clear that implicit in the second prong of the *Sonesta* standard, requiring a balancing of hardships, is the necessity of demonstrating irreparable injury. *Triebwasser and Katz v. American Tel. and Tel. Co.*, 535 F.2d 1356,

---

close and release to Walter D. Burleson, Jr., a Special Investigator of the Veterans Administration, any information or copies of records that may have been obtained in connection with my arrest by agents of the Drug Enforcement Agency on June 11, 1975 at Sioux Falls, SD, with the understanding that the information will be treated as confidential and that it will be used by the Veterans Administration only for official purposes.

"This authorization is given freely and without duress, voluntarily waiving any protection against unauthorized disclosure of information under the Privacy Act and other similar legal provisions."

**5.** No court records were ever provided to the Veterans Administration.

1359 (2d Cir. 1976); *United States v. Culbro Corp.*, 436 F.Supp. 746, 749 (S.D.N.Y.1977).

2. *Irreparable Injury*

██ The plaintiff claims that a preliminary injunction is required to protect both his reputation and career from irreparable injury. However it was precisely this type of damage which the Supreme Court held did not constitute irreparable injury in *Sampson v. Murray, supra.*

The latter case concerned a claim by a probationary federal employee that her planned administrative discharge was not in accordance with proper civil service procedure. Prior to dismissal she sought a temporary injunction enjoining any further action until the Civil Service Commission acted upon her administrative appeal. *Id.* 415 U.S. at 66, 94 S.Ct. 937. The injunction was issued based upon perceived irreparable injury to both income and reputation. *Id.* at 66, 94 S.Ct. 937.

In holding that the injunction had improvidently issued, the Supreme Court found that the alleged damage fell ". . . far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction in this type of case." *Id.* at 91–92, 94 S.Ct. at 953. The Court suggested in that case that the proper remedy was for the employee to seek vindication through administrative channels. If successful, the provisions of the Back Pay Act (5 U.S.C. § 5596) would allow full recovery of all lost salary and benefits. In discussing the legislative history of the Back Pay Act, the Court noted that it was contemplated that the Act's provisions ". . . would be the usual, if not the exclusive remedy for wrongful discharge." *Id.* at 91, 94 S.Ct. at 953.

*Sampson* recognized that a case might arise where the injuries were so severe as to warrant the granting of injunctive relief. That opinion went on to explain,

"Such extraordinary cases are hard to define in advance of their occurrence. We have held that an insufficiency of savings or difficulties in immediately obtaining other employment—external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself—will not support a finding of irreparable injury, however, severely they may affect a particular individual." *Id.* at 92 n. 68, 94 S.Ct. at 953.

The injuries alleged to be irreparable in this instance, (loss of reputation and career potential) are factors present in all employment dismissals and thus do not warrant a departure from the *Sampson* standard. *See, Morgan v. Fletcher,* 518 F.2d 236 (5th Cir. 1975), (loss of medical insurance benefits insufficient to constitute irreparable injury); *Soldevila v. Secretary of Agriculture of the United States,* 512 F.2d 427 (1st Cir. 1975), (psychological problems resulting from discharge insufficient to constitute irreparable injury).

3. *Likelihood of Success on the Merits*

██ The plaintiff asserts that the V.A.'s investigation violated privacy rights protected by 5 U.S.C. § 552a and 21 U.S.C. § 844. The foundation of this claim is the allegation that the "rap sheet" was the critical catalyst to the investigation and but for its existence, the investigation would not have taken place. This contention is unsupported by the record, as evidenced by the following excerpt from the transcript:

Q: "Now, at the time that you first spoke to Mr. Thomas you had been provided a copy of the FBI rap sheet in evidence here; is that correct?" (Assistant United States Attorney Kelly).

A: "That's correct." (Investigator Burleson).

Q: "Based on your experience as an investigator, would you have proceeded any differently in your investigation of Mr. Thomas if what you had instead of the rap sheet was a report from Mr. Card or any other person that Mr. Thomas might have been arrested for a Federal offense in South Dakota sometime in the past?"

A: "No, I would have proceeded the same as I had done."

Q: "You would have conducted the same investigation with the same type of interviews?"

A: "That's correct."

Q: "So that your possession of the rap sheet itself was not the factor which led to your conducting this investigation?"

A: "That's correct." Tr. 114–115.

A second contention critical to the plaintiff's case is the claim that the waiver he executed which allowed the V.A. access to the Drug Enforcement Agency's files was invalid. There are several weaknesses in this claim. First, there has been no showing that the Agency's files fell within the nondisclosure provisions of 21 U.S.C. § 844. Secondly, the plaintiff has not sustained his burden of persuading the Court, that the V.A.'s investigative techniques in any way coerced the plaintiff into signing the waiver. The following exchange between Burleson and the plaintiff at the close of their first formal interview on April 5, 1978 underscores this observation,

Q: "Has this been a voluntary statement, Mr. Thomas?"

A: "This has been a purely voluntary statement."

Q: "Do you have any objections as to the manner in which I conducted this interview?"

A: "None what so ever. I thought it was done well and in good taste." Defendant's Exhibit A, page 5.

The waiver allowing access to the Drug Enforcement files was signed by the plaintiff on the day following the aforementioned interview. To allege that this consent, given by a college graduate with numerous years of administrative experience was involuntary is unsupported by the record.

6. 5 U.S.C. § 1205.

7. 5 U.S.C. § 1206.

8. 5 U.S.C. § 2302(b)(1)(A) and 5 U.S.C. § 2302(b)(8)(A)(ii).

9. 5 U.S.C. § 1208.

10. 5 U.S.C. § 7513 reads in pertinent part:

"(b) An employee against whom an action is proposed is entitled to—

#### 4. The Impact of the Civil Service Reform Act on the Present Dispute

■ Any dismissal proceeding involving the plaintiff must be in accordance with the provisions of the Civil Service Reform Act of 1978 (P.L. 95–454). The purpose of the Reform Act was to infuse and codify merit system principles within the procedures governing federal employment. Senate Report 95–969, 1978. U.S.Code Cong. and Admin.News pp. 2723, 2735.

To this end the Act created a Merit System Protection Board, a quasi-judicial body charged with insuring that the provisions of the Act are followed.[6] To aid the Board in its task, the Act also created the office of Special Counsel which is charged with the duty to investigate inter alia any allegation that a federal agency is engaged in prohibited personnel practices.[7] Two such practices expressly prohibited are the institution of dismissal proceedings for either racial or retaliatory motives.[8] If the Special Counsel finds reasonable grounds to suspect that such prohibited practices are occurring, he may request the Merit Board to stay the disputed personnel action pending further investigation.[9] Thus the provisions of the Reform Act appear ideally suited to deal with the troubling issues raised in the plaintiff's complaint.

#### 5. Given the Present Posture of the Administrative Proceedings Injunctive Relief is Unwarranted

■ At present all that has occurred is that the plaintiff has been served with a notice of termination. Under the provisions of the Reform Act he has the right to respond to all allegations contained in the dismissal notice.[10] If the V.A. chooses to

"(1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;

"(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

"(3) be represented by an attorney or other representative; and

actually dismiss him, the appellate procedures provided by the Reform Act, adequately protect his due process rights. *See, Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). He may appeal to the Merit System Protection Board which must provide him with a formal hearing.[11] There the plaintiff may demonstrate that his dismissal was not supported by a preponderance of the evidence or that the decision,

"(A) shows harmful error in the application of the agency's procedures in arriving at such decision;

"(B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title, or

"(C) shows that the decision was not in accordance with law." 5 U.S.C. § 7701(c)(2).

Further since the plaintiff has alleged racial bias as a motivating factor in his dismissal, he may petition the Equal Employment Opportunity Commission to review any decision ultimately rendered by the Board.[12] If the plaintiff is still aggrieved, he may seek review of his dismissal in the United States Court of Appeals which would review the record and hold unlawful any agency action found to be—

"(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

"(2) obtained without procedures required by law, rule, or regulation having been followed; or

"(3) unsupported by substantial evidence . . . ." 5 U.S.C. § 7703(c). Thus the plaintiff will be allowed several opportunities in which to assert his claims and vindicate his rights.

In deciding whether to allow injunctive relief the Court must gauge the disruptive effect such relief will have upon the administrative process. *Sampson v. Murray, supra,* 415 U.S. at 83, 94 S.Ct. 937. In this instance, the disruptive effect will be substantial for the plaintiff seeks to short-circuit an administrative procedure designed specifically to handle the very sort of issues raised in his complaint. Under these circumstances, injunctive relief would constitute an unwarranted intrusion into the internal affairs of the federal government. Accordingly, the motion for a preliminary injunction is denied.

The foregoing opinion shall constitute the findings of fact and conclusions of law required to be filed by the Court pursuant to Rule 52(a), Fed.R.Civ.P.

SO ORDERED.

---

"(4) a written decision and the specific reasons therefor at the earliest practicable date.

"(c) An agency may provide, by regulation, for a hearing which may be in lieu of or in addition to the opportunity to answer provided under subsection (b)(2) of this section.

"(d) An employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board under section 7701 of this title.

"(e) Copies of the notice of proposed action, the answer of the employee when written, a summary thereof when made orally, the notice of decision and reasons therefor, and any order effecting an action covered by this subchapter, together with any supporting material, shall be maintained by the agency and shall be furnished to the Board upon its request and to the employee affected upon the employee's request."

**11.** 5 U.S.C. § 7701.

**12.** 5 U.S.C. § 7702.