NATIONAL TREASURY EMPLOYEES
UNION, et al., Plaintiffs,

v.

INTERNAL REVENUE
SERVICE, Defendant.

Civ. A. No. 83–2641.

United States District Court,
District of Columbia.

Jan. 3, 1985.

Lois Williams, James R. Lawrence, Matthew L. Rennert, Washington, D.C., for plaintiffs.

Edward J. Snyder, J. Brian Ferrel, Michael J. Salem, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

This is an action for alleged breach of the Privacy Act, ("Act") 5 U.S.C. § 552a (1982), brought against the Internal Revenue Service ("IRS"). The plaintiffs are the National Treasury Employees Union ("the union") and Ronald Thomas, a former IRS employee. They seek to enjoin the IRS from maintaining and disseminating certain documents pertaining to the plaintiff Thomas. They also request monetary relief and an order reinstating Thomas to his former position.

The matter comes before the Court on cross motions for summary judgment. Although the parties vigorously dispute each other's *characterizations* of the facts, the facts themselves are essentially settled either by stipulation or by mutual reference in supporting memoranda. Summary judgment is therefore appropriate. *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 244 (5th Cir.), *reh'g denied*, 710 F.2d 837 (1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984).

## BACKGROUND

Plaintiff Thomas was a Special Agent in a District Office of the IRS. On February 26, 1981, just a few months after Thomas received a within-grade salary increase, he was issued a notice of removal, which he immediately appealed to the Merit Systems Protection Board. Pursuant to a written settlement agreement executed by the IRS, Thomas, and the union on April 28, 1981, he resigned from the IRS on May 2, 1981, and withdrew his MSPB appeal. In return,

> The Internal Revenue Service agrees to expunge from Mr. Thomas' official personnel folder and all other personnel files all recordations pertaining to the adverse action dated February 26, 1981, and to the incidents and conduct referred to therein.

> The ... IRS agrees that if asked for an employment reference concerning Mr. Thomas, except by another district or division of the Internal Revenue Service, no statements or remarks will be made regarding the above-mentioned adverse action or the incidents or conduct which were the basis for said adverse action.

In May 1981, a prospective employer, the Marion Pepsi-Cola Bottling Company, contacted the IRS for an employment reference. This inquiry was made by mailing to

the IRS a blank evaluation form, which included the following statement, subscribed by Thomas:

I have applied to Marion Pepsi-Cola ... for employment and I desire that they be fully advised of my record with former employers. I hereby authorize Marion Pepsi-Cola ... to investigate my past record and I release Marion Pepsi-Cola ... and any other Company, Institution, or Agency from any liability arising from such investigation and verification.

The IRS responded by grading Thomas "good" (the most favorable choice of response) in quality and quantity of work, ability to learn, and attendance, but "poor" (the lowest alternative) in cooperation and attitude, conduct, and safety habits. The IRS also responded that, given the opportunity, it would not rehire Thomas, and when asked to state Thomas' reason for leaving his employment with the IRS, wrote "See attached resignation letter." Thomas' letter reads:

Consider this as my formal resignation from my position with the Internal Revenue Service, Springfield District as a Special Agent/Criminal Investigator (GS–1811–13 step 03) effective close of business May 2, 1981.

Without enumerating the multiplicity of reasons for this resignation, and for the sake of brevity, I will merely state that since my employment with the Internal Revenue Service as of May 29, 1973, the goals, philosophies and ideologies of the Service have become so aberrated and sterilized that they are no longer consistent with my own, and I, in good conscience, find that I cannot stay affiliated with this organization. Additionnally [sic], any faith or trust that I once held for the management of the Internal Revenue Service has been dispelled by the actions of the current managers in the Springfield District.

During the period February 27, 1981 and May 2, 1981, I have been available for duty.

The IRS also responded to two subsequent inquiries about Thomas' employment, from Southern Illinois University and from Carol King, an employment agent working for Thomas. In doing so it limited itself to oral references and did not state whether, given the opportunity, it would rehire Thomas.

In June 1981, Thomas directed a Freedom of Information Act request to the IRS for all pertinent documents from its personnel files relating to his employment history. The IRS responded on August 13 by providing him the relevant contents of their files marked "36.001 Appeals, Grievances and Complaint Records" and "90.004 Chief Counsel General Legal Services Case Files." The IRS supplied documentation of the February 26 removal action, as well as several internal decision letters detailing the allegations of misconduct made by Thomas' superiors.

On October 20, 1982, Thomas submitted a second FOIA request, identical to his first. On November 20, 1982, the IRS responded by providing him copies of the same documents they had provided on August 13, 1981.

The plaintiffs filed this complaint on September 7, 1983, claiming that, as a result of the defendant's actions and Thomas' ensuing difficulties in obtaining employment, Thomas suffered extreme distress, resulting in physical and mental damage. The substance of the complaint is that the IRS breached its settlement agreement with Thomas and the union by continuing to maintain files pertaining to the removal action, and by disseminating Thomas' letter of resignation to a potential employer. The legal theory advanced, however, is not breach of contract,[1] but, "intentional or willful" violation of the Privacy Act. 5 U.S.C. § 552a(g)(4) (1982).

---

**1.** A count in the original complaint alleged that the IRS had unconstitutionally deprived Thomas of a vested contract right, but this count was dismissed by stipulation of the parties. *See* Joint Stipulation of Fact (December 23, 1983).

## ANALYSIS

The plaintiffs cite three provisions of the Act which they claim have been violated. Each will be discussed in turn.[2]

### A.

Section (e)(1) of the Privacy Act provides in relevant part that

Each agency ... shall ... maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President [.]

The plaintiffs contend that the IRS violated this provision by maintaining (as Thomas learned when the IRS responded to his FOIA requests) documentation of the removal action against Thomas and the incidents upon which it was based. The substance of their legal argument in support of this contention is that the IRS' promise (in the April 28, 1981 settlement agreement) to expunge from its personnel files all recordations pertaining to the adverse action "evidences the agency's admission that the maintenance of these records is neither relevant nor necessary to accomplish the agency's legitimate purposes." Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (May 2, 1984) at 6.

█ The Court agrees with the defendant that the disputed records are relevant and necessary to accomplish legal purposes of the agency. The settlement agreement itself allows the IRS to consider the adverse action and the incidents preceding it should Thomas seek employment with another district or division of the IRS. Also, should Thomas reinstate his appeal to the Merit Systems Protection Board (arguing that the IRS has breached the agreement upon which he relied in withdrawing his initial appeal), the defendant would certainly be entitled to defend its 1981 removal action before the Board. These legitimate purposes can be adequately accomplished only if the IRS maintains some documentation of the action and the incidents on which it was based. Finally, it is inarguable that these records would be "relevant" to the accomplishment of valid agency objectives, absent the settlement agreement. *See Chocallo v. Bureau of Hearings and Appeals, SSA*, 548 F.Supp. 1349, 1368 (E.D.Pa.1982), *aff'd*, 716 F.2d 889 (3rd Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 426, 78 L.Ed.2d 360 (1983). The plaintiffs have simply failed to explain how the existence of the agreement, even if breached,[3] changes this characterization, except for the conclusory statement that it constitutes an "admission" by the IRS to that effect. As the defendant aptly states, "By entering the settlement agreement, the Internal Revenue Service admitted exactly nothing—just as plaintiff Thomas admitted nothing by the same action." Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (June 25, 1984) at 10. Accordingly, the Court holds that section (e)(1) of the Privacy Act has not been violated.

### B.

Section (e)(5) of the Privacy Act provides in part that

Each agency ... shall ... maintain records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination [.]

The plaintiffs argue that "by issuing the negative employment references on plain-

---

**2.** In view of the Court's ruling that there is no violation of the Privacy Act on these facts, it is unnecessary to consider the IRS' argument that the union lacks standing.

**3.** The IRS argues that it is not in breach of the settlement agreement since the agreement refers to "personnel files" and the records are being maintained in "litigation files." This distinc-

tion, says the IRS, comports with the construction given identical language in previous settlement agreements between the union and IRS. *See* Declaration of Jeffrey J. Sieburg (May 9, 1984). Since the plaintiffs have not claimed breach of contract, the Court makes no finding in this respect.

tiff Thomas the IRS ... made a determination about him using records it had contractually agreed to expunge." Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment (May 2, 1984) at 7.

■ To establish a section (e)(5) violation a plaintiff must show (1) that the agency made some unfair determination about the individual, *Zeller v. United States,* 467 F.Supp. 487 (E.D.N.Y.1979); (2) that the determination was based upon records of flawed "informational quality," *Clarkson v. Internal Revenue Service,* 678 F.2d 1368 (11th Cir.1982); and (3) "a causal relationship between the allegedly erroneous record and an adverse determination based on that record," *Edison v. Department of the Army,* 672 F.2d 840 (11th Cir.1982).

■ The Court begins by noting that it sees nothing unfair about the determination to issue a negative rather than positive employment reference on Thomas. The settlement agreement provided only that the IRS would not communicate the fact of or the circumstances surrounding that adverse action to prospective employers. Even if the agreement prohibited the IRS from preserving a written record of the incidents on which the adverse action was based, it did not purport to bar Thomas' superiors from taking their own recollections of the matter into consideration, and it certainly did not guarantee Thomas positive employment references. Furthermore, there is no evidence in the record to suggest that the employment references given by Thomas' superiors were in fact based on written records, rather than recollections, even assuming that those records were somehow inaccurate, irrelevant, untimely, or incomplete. Most importantly, no reasonable inference can be drawn that the IRS would have determined to give Thomas a positive employment reference had they not considered the written record of the incidents surrounding the adverse action. Thus, none of the three requisite elements of a section (e)(5) violation are satisfied.

**C.**

Section (e)(6) of the Privacy Act provides that:

> Each agency ... shall ... prior to disseminating any record about an individual to any person other than an agency, unless the dissemination is made pursuant to [the Freedom of Information Act], make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes.

Plaintiffs claim that the IRS violated this provision by disseminating Thomas' letter of resignation to a prospective employer, Marion Pepsi-Cola. They argue that, since the letter refers to "actions" of the district managers and Thomas' lack of faith in the IRS, dissemination of the letter breached the IRS' promise not to mention the adverse action to prospective employers. This, they say, establishes that the letter is not accurate, complete, timely, and relevant for agency purposes.

The IRS responds that the letter could not have been contemplated by the agreement since it was submitted after the agreement was executed. They also argue that their actions were not "unreasonable," since the Federal Personnel Manual, Ch. 24, Subch. 7–2b.(2)(d), requires agencies to release, in response to inquiries from prospective non-Federal employers, a former employee's reason for departure from the Federal service. Since Thomas' stated reason for leaving the IRS was too lengthy to fit on the usual form, the IRS simply forwarded Thomas' own letter, "and if his prose was imprudent, that is attributable to his own lack of judgment." Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment (June 25, 1984) at 14, 17, *citing Albright v. United States,* 558 F.Supp. 260, 265 (D.D.C.1982), *aff'd,* 732 F.2d 181 (D.C.Cir.1984) (Court refused to find Privacy Act violation against agency which maintained videotape describing employee First Amendment activities where creation of videotape was prompted by request of employee).

■ The IRS also raises, as affirmative defenses, the two year statute of limi-

tations, under section 552a(g)(5) of the Act, and the release of liability signed by Thomas on the Marion Pepsi-Cola reference form. The court finds each of these defenses sufficient to defeat the plaintiffs' claim. Section (g)(5) requires that actions be brought "within two years from the date on which the cause of action arises." The IRS disclosed the letter of resignation to Marion Pepsi-Cola on May 26, 1981, and this action was brought on September 7, 1983, more than two years later. Even if the complaint was timely, the waiver signed by Thomas would bar liability under this section. That waiver stated "... I [Thomas] release Marion Pepsi-Cola Bottling Company and any other Company, Institution, or Agency from any liability arising from such investigation and verification." The plaintiffs' only argument against the effectiveness of this release is that "when Mr. Thomas signed this waiver in May 1981 he was operating under the assumption that IRS was going to honor its contractual guarantee...." Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment (June 25, 1984) at 10. In effect, the plaintiffs ask the Court to construe the waiver to say, "I release the IRS from any liability, unless they do something that would otherwise subject them to liability." The Court declines to adopt this construction.

### EQUITABLE RELIEF

Although the Court finds no violation of the Privacy Act entitling the plaintiffs to statutory relief,[4] their complaint also invokes the Court's equitable powers. Under the circumstances presented in this proceeding, some measure of relief is warranted and appropriate. Specifically, the Court finds that there is no compelling reason for the IRS to include within its files (however labeled) plaintiff Thomas' May 1, 1981 letter of resignation.

■ It is within the inherent equitable powers of a federal court to order the expungement of a record in an appropriate

case. *United States v. Doe*, 556 F.2d 391, 393 (6th Cir.1977). Although the remedy is most frequently employed to vindicate express or implied constitutional or statutory rights, *see, e.g., Tarlton v. Saxbe*, 507 F.2d 1116 (D.C.Cir.1974), the remedy need not always be so limited. For example, in *Chastain v. Kelley*, 510 F.2d 1232 (D.C.Cir. 1975), the Court held that an FBI agent whose proposed termination was cancelled might be entitled to expungement from his personnel files of the circumstances surrounding the proposed termination, in order to vindicate his "right not to be adversely affected by the information in the future." *Id.* at 1236.

■ "[D]etermination of the propriety of an order directing expungement involves a balancing of interests; the harm caused to an individual by the existence of any records must be weighed against the utility to the Government of their maintenance." *Hobson v. Wilson*, 737 F.2d 1, 65 (D.C.Cir. 1984), *citing Paton v. La Prade*, 524 F.2d 862, 868 (3rd Cir.1975). Here, plaintiff Thomas is being substantially harmed in his efforts to secure employment by the dissemination of his ill-advised letter of resignation to prospective employers. On the other side of the balance, the letter is of little or no utility to the IRS. Although the Federal Personnel Manual requires informing prospective employers who inquire of the reason for the employee's departure from the federal service, there is no reason why this requirement could not be satisfied without Thomas' letter, simply by stating that Thomas voluntarily resigned. Dissemination of the letter serves only to prejudice Thomas. Nor is the letter necessary to the accomplishment of any of the agency purposes for which the other records at issue in the case are being maintained. Thus, with regard to the letter of resignation, the balance prescribed in *Hobson v. Wilson* leans heavily towards plaintiff Thomas.

---

4. Since the Court finds no violation of the Act, it is unnecessary to decide whether the IRS' conduct was "intentional or willful." 5 U.S.C. § 552a(g)(4) (1982).

An appropriate order consistent with this Memorandum Opinion will be entered.